**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**CRYSTAL SARVAK,**

          **Plaintiff**

**v.**                      **Case No. 1:10-cv-942-HJW**

**DDR CORP., F/K/A DEVELOPERS**
**DIVERSIFIED REALTY CORP., et al,**

          **Defendants**

**<u>ORDER</u>**

      This matter is before the Court upon the "Motion for Summary Judgment" (doc. no. 23) by defendant Developers Diversified Realty Corporation ("DDR"). Also pending is the joint "Motion for Summary Judgment" (doc. no. 26) by defendant Urban Retail Properties, LLC ("Urban") and defendant Coventry Real Estate Advisors, LLC ("Coventry"). Crystal Sarvak ("plaintiff") has filed a single brief in opposition (doc. no. 30), and defendants have replied (doc. nos. 37, 38). The defendants have filed two sets of proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. nos. 31, 32). Having considered the record, including the pleadings, briefs, exhibits, proposed findings, and applicable authority, the Court will grant both motions for the following reasons:

<u>**1**</u>

## I.  Background

The relevant facts are largely undisputed. To the extent the parties disagree as to the characterization of certain facts or their legal significance, such disputes will be noted herein.

Defendant Coventry owns the Tri-County Mall located in Cincinnati, Ohio, and defendant DDR managed this property until December 10, 2009. During the time that DDR managed the mall, Michael Lyons was General Manager for DDR at this location. In June of 2007, he hired Crystal Sarvak (age 44) for the full-time property accountant position at the mall. In this position, Sarvak assisted or otherwise supported various functions of the central accounting department of DDR's corporate office (doc. no. 25-7 at 20-21, listing central office accounting functions and onsite support functions).

By all accounts, plaintiff was a good employee. Lyons gave her favorable performance reviews and at least one raise. During her employment with DDR, plaintiff made several requests for schedule changes and leave, all of which Lyons granted (doc. no. 31 at ¶¶ 4-5). On September 2, 2009, Lyons sent a group email to DDR employees, including Sarvak, setting forth the company's policies on work

schedules as provided in the Employee Handbook (doc. no. 25-7, Lyon Dep., Ex. J). The next day, Sarvak requested to take a later lunch hour and to reduce her hours to part-time, "perhaps 32.5 to 35 hours per week" (Id., Ex. J, CS 518). Lyons indicates that after checking with his own supervisor, he denied the request for part-time hours because "the position required full-time duties" (Id., Lyons Dep. at 22). He indicates he told Sarvak that DDR "would help her with flex time" but that the position had to remain full time. (Id.) Plaintiff alleges that she got no response but "made arrangements so that she would not need a different schedule" (doc. no. 1 at ¶ 21).

Plaintiff "disputes" that she requested part-time hours and contends that she was merely asking for full-time that was less than "50-55 hours" (doc. no. 30 at 16, 23). Plaintiff's own written request does not support her characterization. She specifically requested to work "part time," suggested "perhaps approx. 32.5 to 35 hours," and indicated that she would be "available to resume full-time status of working 40 hours per week" in the summer (doc. no. 25-7 at 4). Given plaintiff's own words, Lyons reasonably understood that plaintiff was requesting part-time hours (Lyons Dep. 16-22).

On November 11, 2009, Coventry informed DDR that a different company (Urban) would be taking over the management of the Tri-City Mall as of December 11, 2009 (doc. no. 23-2 at 2, "Stipulation of Facts"). Due to this change in management, DDR eliminated all its employee positions at Tri County Mall (including plaintiff's position), effective December 10, 2009.

Prior to the date Urban was scheduled to assume management, Brian Alper, Senior Vice President of Human Resources for Urban, contacted DDR's General Manager (Michael Lyons) to begin arranging the transfer of management. Urban was interested in hiring the current employees at the mall, and Alper asked Lyons if there was anyone on the current DDR staff whose responsibilities would not fit into the Urban system. Lyons had previously worked for Urban for several years as the Assistant General Manager at Kenwood Mall in Cincinnati, Ohio, and was familiar with Urban's practices and its accounting system (doc. no. 31 at 3, ¶¶ 10-12). Lyon indicated that DDR and Urban used different accounting systems and that the responsibilities of DDR's on-site accountant were substantially different from the responsibilities of Urban's on-site accountant (Lyons Dep. at 88).

Specifically, DDR had a centralized accounting department whose functions plaintiff administratively assisted, whereas Urban had field-based accounting that required more in-depth accounting knowledge and skills under a different program (doc. no. 31 at ¶ 13). Although plaintiff "disputes" that the positions were substantially different, she acknowledges that Urban used a different accounting program ("CTI") than DDR and that she had not used it. The salient point here is whether Lyons brought Alper's attention to the differences between the two accounting positions. The evidence is undisputed that he did (doc. no. 32 at ¶ 15).

On November 23, 2009, Alper emailed Patrick Dunne, Vice President, Regional Accounting Manager for Urban, to ask him to speak with Sarvak "to get a feel for what she would be capable of doing by discussing the role that an onsite accountant plays with Urban" (doc. no. 25-7 at 18). Dunne's role in the hiring process was "to interview accountants and then make recommendations whether we should hire them" (doc. no. 25-9 at 3, Dunne Dep. at 9).

The following day, Dunne spoke with Sarvak to determine whether she was capable of handling the responsibilities of Urban's

accounting position (doc. no. 32 at ¶¶ 14-15). During this telephone conversation, Dunne learned from Sarvak that she did not "post cash receipts, she did not enter accounts payable, she did not do the rent roll billing, she did not do reconciliation billings and she did not prepare the budget . . . she had not worked with CTI" (doc. no. 25-9 at 7, Dunne Dep. at 25). After interviewing Sarvak, Dunne concluded that Sarvak lacked the necessary experience and skills for Urban's field-based accounting position (Id., Dunne Dep. at 28 "Crystal did not do the duties . . . that the property accountant would have to do"). He recommended that Urban look for another candidate. Joe McCarthy, Senior Vice President of Accounting for Urban, approved the recommendation. Dunne did not speak with Lyons, and Lyons was unaware of Urban's hiring decision until later.

On November 24, 2009, Alper emailed DDR, advising that Urban would not be hiring Sarvak because "DDR does accounting centrally and her capabilities do not seem to be in-line with what we require from our on-site accounting staff." On November 30, 2009, Lyons informed employees, including Sarvak, that their DDR positions were

being eliminated as of December 10, 2009. He also advised Sarvak of Urban's email indicating that Urban would not be hiring her.

Urban posted its accounting position on the Career Builder website. Plaintiff was aware of this, but did not apply because she had already learned that Urban did not intend to hire her for its accounting position. On December 28, 2009, after reviewing dozens of applications, Urban hired Patricia Staley, a 57-year old woman, for the position (doc. no. 27 at 3, ¶20). Staley had previously worked for Urban as a property accountant and had experience with Urban's CTI accounting system (¶ 21).

On May 12, 2010, Sarvak filed charges with the Equal Employment Opportunity Commission ("EEOC") against DDR, Urban, and Coventry, alleging that she was terminated by DDR/Coventry and was not hired by Urban, due to her age, sex, or association with her disabled children. In her charge, she alleged (inaccurately) that DDR and Coventry were "co-owners" of the mall, that she worked for both companies, and that she was replaced a younger employee (doc. no. 25-2 at 88). The EEOC found that her allegations were not substantiated by the evidence and did not warrant further processing.

On September 29, 2010, the EEOC dismissed the charges and sent plaintiff a notice of suit rights (doc. nos. 25-2 at 45-49; 32 at ¶¶ 26-27).

On December 28, 2010, Sarvak filed a six-count complaint against DDR, Coventry, and Urban, alleging discrimination under federal and state law based on her age, sex, and association with her disabled children. For each count, plaintiff recites that the three defendants discriminated against her by "treating her differently than similarly-situated employees, terminating her employment, and refusing to hire her." After discovery concluded, the defendants filed two separate motions for summary judgment, which plaintiff opposes. These matters are fully briefed and ripe for consideration.

## II. Issues Presented

In the first motion, the main issue is whether defendant DDR is entitled to summary judgment on plaintiff's claims of age, sex, and associational disability discrimination because plaintiff has not established a prima facie case of discriminatory discharge, and additionally because plaintiff has not shown that DDR's stated reason for its decision to terminate all of its positions was pretextual.

In the second motion, the main issues are 1) whether defendant Coventry is entitled to summary judgment because plaintiff concedes there is no evidence that Coventry was involved in any decisions regarding plaintiff's employment; and 2) whether defendant Urban is entitled to summary judgment because plaintiff has not established a prima facie case of "failure to hire" and additionally because plaintiff has not shown that Urban's stated reasons for its hiring decision were a pretext for discrimination.

### III.  Standard of Review

Rule 56(a) of the Federal Rules of Civil provides in relevant part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. <u>Id</u>. at 587. In doing so, the United States Supreme

Court has explained that courts must distinguish between evidence of disputed material facts and mere "disputed matters of professional judgment," i.e. disagreement as to legal implications of those facts. Beard v. Banks, 548 U.S. 521, 529 30 (2006).

The district court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A genuine dispute exists "only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." Id. at 252. On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249.

## IV. Relevant Law

The Age Discrimination in Employment Act ("ADEA") forbids an employer from discharging an employee "because of such individual's age." 29 U.S.C. § 623(a)(1).

Title VII of the Civil Rights Act of 1964 provides in relevant part that an employer may not "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e 2(a)(1).

Section 102(b)4 of the Americans with Disabilities Act ("ADA"), prohibits "excluding or otherwise denying equal job benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

Under Ohio law, R.C. § 4112.02 provides that it shall be an unlawful discriminatory practice:

> (A) For any employer, because of the ... [age, sex, or disability] ... of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment . . .

Given the similarity of the state and federal statutes, courts may generally apply federal precedent to employment discrimination claims under Ohio law. See Hampel v. Food Ingredients Specialties,

Inc., 729 N.E.2d 726, 731 (Ohio 2000); <u>Hawkins v. Anheuser Busch, Inc.</u>, 517 F.3d 321, 333 (6th Cir. 2009); <u>Genaro v. Cent. Transport</u>, 84 Ohio St.3d 293, 298 (1999) (reliance on federal decisions for interpretation of Ohio law is appropriate when the terms of the statutes are consistent or when the Ohio statute has left a term undefined). In most instances, resolution of the federal claims will resolve the state claims as well. See <u>Minadeo v. ICI Paints</u>, 398 F.3d 751, 763 (6th Cir. 2005) (age); <u>Gettings v. Bldg. Lab. Local 310 Fringe Ben. Fund</u>, 349 F.3d 300, 305 (6th Cir. 2003) (sex); <u>Jakubowski v. The Christ Hospital</u>, 627 F.3d 195, 201 (6th Cir. 2010) (disability).

An employment discrimination case may be based upon direct or indirect evidence. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences," <u>Rowan v. Lockheed Martin Energy Sys., Inc</u>., 360 F.3d 544, 548 (6th Cir. 2004), whereas indirect evidence requires the drawing of an inference. <u>Johnson v. Kroger Co.</u>, 319 F.3d 858, 865 (6th Cir. 2003).

For employment discrimination claims based on indirect evidence, the burden shifting evidentiary framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), as modified by <u>Texas</u>

**Dept. of Community Affairs v. Burdine**, 450 U.S. 248, 256 (1981), applies. See **Spengler v. Worthington Cylinders**, 615 F.3d 481, 491-92 (6th Cir. 2010) (age); **Peltier v. United States**, 388 F.3d 984, 987 (6th Cir. 2004) (sex); **Smith v. Chrysler Corp.**, 155 F.3d 799, 805 (6th Cir. 1998) (disability).

The burden-shifting evidentiary framework also applies to Ohio claims based on indirect evidence. **Coryell v. Bank One Trust Co. N.A.**, 101 Ohio St.3d 175, 179 (2004); **Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.**, 61 Ohio St.3d 607, 610 (1991) ("the requisite burdens of proof regarding particular evidentiary issues established by the federal courts are relevant in determining whether there exists reliable, probative and substantial evidence of discrimination in violation of R.C. Chapter 4112").

A plaintiff must first establish a prima facie case of employment discrimination. Upon doing so, the burden shifts to the employer to "articulate a nondiscriminatory reason for its action." **Harris v. Metro. Gov. of Nashville & Davidson Cty., Tenn.**, 594 F.3d 476, 485 (6th Cir. 2010). If the employer does so, the plaintiff must then rebut the proffered reason by pointing to sufficient evidence from which the jury

may reasonably reject the employer's explanation as pretextual. Schoonmaker v. Spartan G. L., LLC, 594 F.3d 476, 264 (6th Cir. 2010).

A plaintiff can rebut the employer's legitimate, nondiscriminatory reason by showing that it: (1) had no basis in fact, (2) did not actually motivate the termination, or (3) was insufficient to motivate the adverse action. Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009). The ultimate question in every employment discrimination case is whether the plaintiff was the victim of intentional discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000).

Although the burden of production shifts, plaintiff retains the ultimate burden of persuasion at all times to demonstrate "that age was the 'but-for' cause of [the] employer's adverse action." Schoonmaker, 595 F.3d at 264 (quoting Gross, 129 S.Ct. at 2351 fn. 4); Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012) (same). Similarly, in ADA cases, plaintiff bears the burden of demonstrating that disability was a "but for" cause of the employer's adverse action. Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312, 315 (6th Cir. 2012) (en banc).

V.  Discussion

## A. Plaintiff's Age and Sex Discrimination Claims Against DDR

To establish a prima facie case of age or sex discrimination based on indirect evidence, the plaintiff must show that (1) she was a member of a protected class (i.e. over forty, female); (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone substantially younger and/or male, or was treated differently than similarly situated, nonprotected employees. **Peltier**, 388 F.3d at 987 (sex); **Geiger v. Tower Automotive**, 579 F.3d 614, 622 (6th Cir. 2009) (age). DDR's elimination of all jobs at the mall was essentially a workforce reduction. **Geiger**, 579 F.3d at 623 ("A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company."). When an employee is discharged as part of a workforce reduction, the fourth element is modified to require "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." **Id**. (citing **Barnes v. GenCorp, Inc.**, 896 F.2d 1457, 1465 (6th Cir. 1990)); **Metz v. Titanium Metals Corp.**, 2012 WL 1034653, *2 (6th Cir. (Ohio)) (same).

The record reflects that: 1) plaintiff was female and over forty; 2) she was subject to an adverse action when DDR eliminated her position (thereby terminating her employment with DDR); and 3) she was qualified for her DDR position. The first three prongs of plaintiff's prima facie case against DDR are met.

At the fourth prong, DDR asserts that plaintiff has not shown that she was "replaced" by someone male or substantially younger, nor has she shown that she was "treated differently" than any similarly situated employees. Plaintiff was not replaced by anyone in her former DDR position, as that job was eliminated and no longer existed. She was not treated differently than any other DDR employee, as **all** DDR employees at the Tri-City Mall – regardless of their age or sex -- were terminated from DDR. The terminated DDR employees included nine women and five men. Five were younger than plaintiff and eight were older than plaintiff. All were terminated from their DDR positions. At the fourth prong, plaintiff has failed to put forth any evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. Plaintiff has not shown any disparate treatment by DDR and has failed to set forth a prima facie case. See,

e.g., <u>Sperber v. Nicholson</u>, 342 Fed. Appx. 131, 132 (6th Cir. 2009) (observing that employee failed to establish prima facie case of discrimination, absent evidence that similarly-situated non-protected employees were treated differently).

Moreover, DDR has advanced a legitimate non-discriminatory reason for plaintiff's termination, namely, that DDR lost the contract to manage the mall, and thus, had to eliminate all the employee positions at that location. See <u>Bell v. Prefix, Inc</u>., 321 Fed. Appx. 423, 428 n. 1 (6th Cir. 2009) (explaining that "RIFs are legitimate, nondiscriminatory reasons for adverse employment decisions"); <u>Gambill v. Duke Energy Corp</u>., 456 Fed. Appx. 578, 588 (6th Cir. 2012) (same). Plaintiff has not rebutted DDR's stated reason by pointing to any evidence that her employer's stated reason had no basis in fact, did not actually motivate her termination, or was insufficient to motivate the employer's action. <u>Chen</u>, 580 F.3d at 400.

"At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." <u>Chen</u>, 580 F.3d at 400 n. 4; <u>Grizzell v. City of Columbus Div. of Police</u>, 461 F.3d 711, 719 (6th Cir. 2006).

Plaintiff has not presented evidence from which a jury could reasonably infer that the elimination of the DDR positions, including plaintiff's position, was merely a pretext for any discrimination.

## B.  Plaintiff's "Associational Disability" ADA Claim Against DDR

Plaintiff claims that her discharge from DDR was discriminatory because she has two disabled children. A plaintiff may establish a prima facie claim of associational disability under the ADA by showing that "(1) she was qualified for the position; (2) she was subject to an adverse employment action; (3) she was known to have a relative with a disability; and (4) the adverse employment action occurred under a circumstance that raises a reasonable inference that the disability of the relative was a determining factor in the decision." <u>Stansberry v. Air Wis. Airlines Corp.</u>, 651 F.3d 482, 487 (6th Cir. 2011); <u>Overly v. Covenant Transport, Inc.</u>, 178 Fed. Appx. 488, 493 (6th Cir. 2006).

A plaintiff "must offer some evidence to suggest that the adverse employment action . . . she suffered was due in some measure to discriminatory animus." <u>Stansberry</u>, 651 F.3d at 488. Plaintiff has failed to do so. As already discussed, all the DDR employees at that location were terminated from DDR on the same day when their

positions were eliminated. This raises no reasonable inference of discriminatory animus against plaintiff. See, e.g., <u>Sturgeon v. Southern Ohio Med. Ctr.</u>, 2011 WL 5878387, *12 (S.D. Ohio) (J. DLott) ("[plaintiff] has not identified any specific evidence which raises a reasonable inference that [defendant] harbored discriminatory animus towards her based on her husband's disability"). DDR is entitled to summary judgment on plaintiff's "disability association" claim under the ADA.

To the extent plaintiff is attempting to assert an "associational" claim under Ohio law (doc. no. 1 at ¶¶ 50-56), courts have repeatedly held that no such claim exists in the disability context under Ohio law. <u>Smith v. Hinkle Mfg. Inc.</u>, 36 Fed. Appx. 825, 830-31 (6th Cir. 2002) (pointing out that, unlike the ADA, the Ohio statute "contains no comparable prohibition against associational discrimination"); <u>Berry v. Frank's Auto Body Carstar, Inc.</u>, 817 F.Supp.2d 1037, 1047–48 (S.D.Ohio 2011) ("This Court has followed the holding of <u>Smith</u>, as has the Northern District of Ohio."); <u>Winkelmann v. Big Lots Stores, Inc.</u>, 2009 WL 3788673, at *1 (S.D.Ohio) ("the Ohio discrimination statute, unlike federal law, contains no prohibition against associational discrimination"); <u>Sturgeon</u>, 2011 WL 5878387, *1 (S.D.Ohio) (holding

that plaintiff's claim failed as a matter of law because there "is no associational disability claim under Ohio law"); <u>Baker v. City of Toledo, Ohio</u>, 2007 WL 1101254, at *6 (N.D.Ohio 2007) ("there is no such claim under state law"); <u>Anthony v. United Tel. Co. of Ohio</u>, 277 F.Supp.2d 763, 776 (N.D.Ohio 2002) ("Ohio law does not recognize such a claim").

Additionally, although it is unclear whether plaintiff is asserting a "failure to accommodate" claim against DDR, such claim would also be subject to summary judgment. In her complaint, plaintiff alleges that she "made a request to her boss, Michael Lyons, General Manager, for a revised work schedule due to providing care for her disabled children" (doc. no. 1 at ¶ 21). The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. §12112(b)(5)(A). The evidence does not reflect that plaintiff was disabled, and the federal regulations provide that employers are not required to provide reasonable accommodation to non-disabled workers under the ADA. See 29 C.F.R. §1630.8 App. at 379 (2007); <u>Stansberry</u>, 651 F.3d at 489 ("[plaintiff] was not entitled to a reasonable accommodation on account of his wife's disability");

**Overly**, 178 Fed. Appx. at 493 ("Unlike a claim brought by a disabled person, an employer is not required to reasonably accommodate an employee based on her association with a disabled person.").

Moreover, DDR could properly decline to allow plaintiff to work part-time in a full-time position. For example, in **Overley**, 178 Fed. Appx. at 493, the Sixth Circuit affirmed summary judgment for the employer, explaining:

> "[Plaintiff] cannot claim that [her employer] discriminated against her by not . . . allowing her to modify her schedule so that she could care for her daughter. An employee who cannot meet the attendance requirements of her job is not protected by 12112(b)(4)."

Although plaintiff argues that she requested "reduced full-time hours," her own written request indicates that she requested part-time hours. A district court need not view the alleged facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." **Scott v. Harris**, 550 U.S. 372, 380 (2007). The record reflects no genuine disputes of material fact as to any alleged "failure to accommodate." Under any theory, DDR is entitled to summary judgment on plaintiff's claim under the ADA.

**B.  Plaintiff's Claims Against Coventry**

Defendant Coventry, the owner of the Tri-City Mall, moves for summary judgment because "there is no evidence that it was involved in any decision relating to [plaintiff's] employment." Coventry points out that it did not employ plaintiff and had nothing to do with the employment decisions at issue. Plaintiff appropriately "does not dispute dismissal of Defendant Coventry Real Estate Advisors from this suit" (doc. no. 30 at 6, fn.1). Given the lack of any genuine disputes of material fact as to this defendant, Coventry is entitled to summary judgment on all of plaintiff's claims against it.

**C.  Plaintiff's "Failure to Hire" Claims Against Urban**

Defendant Urban moves for summary judgment on plaintiff's claims that Urban discriminated against her on the basis of her age, sex, and/or disability association when it chose not to hire her for its accounting position, and instead, chose a better-qualified applicant for the position.

The Court must first consider whether plaintiff is proceeding with direct or indirect evidence. Plaintiff argues that she has presented "direct" evidence because Lyon's comments to Alper allegedly

"influenced" Urban's decision (doc. no. 30 at 18-20). Lyons was employed by DDR at the time and accurately indicated to Alper that the two companies had different accounting systems and that the onsite positions involved substantially different duties and skill levels.

Plaintiff urges that Lyons' statements to Alper were rooted in discriminatory animus. In the first place, Lyons' comments were objective, factually accurate, and do not reflect any discriminatory animus on their face. A statement of concern by a supervisor that an employee cannot perform the job in question in response to a valid inquiry is not direct evidence of bias. Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 455 (6th Cir.), cert. denied, 543 U.S. 817 (2004). Although plaintiff urges that these factually accurate comments should be construed as discriminatory, this would require an inference regarding Lyons' purported motivation. "Evidence is not considered direct evidence unless a[n improper] motivation is explicitly expressed." Grubb v. YSK Corp., 401 Fed. Appx. 104, 109 (6th Cir. 2010). Plaintiff's case therefore depends on circumstantial evidence. Grizzell, 461 F.3d at 719 (the inference prevents the evidence from being direct evidence).

Moreover, the evidence reflects that Lyons, as a DDR employee, had no authority over any hiring decision at Urban. "Comments made by individuals who are not involved in the decision making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." Carter v. Univ. of Toledo, 349 F.3d 269, 273 (6th Cir. 2003). Although plaintiff makes much of the fact that Lyons (and the rest of the DDR employees at the mall) were later hired by Urban and argues that Lyons knew he was likely to be hired by Urban, this does not change the fact that he had no authority to make (and did not make) the hiring decision at issue for Urban.

Plaintiff's reliance on the "cat's paw" theory of liability is misplaced.[1] This phrase "refers to a situation in which a biased subordinate, who lacks decisionmaking power, influences the unbiased decisionmaker to make an adverse [employment] decision, thereby hiding the subordinate's discriminatory intent." Horner v. Klein, 2012 WL 3711556, *6 (6th Cir. (Ohio)) (quoting Cobbins v. Tenn.

---

[1] See Arendale v. City of Memphis, 519 F.3d 587, 604 (6th Cir. 2008) (explaining that the term "cat's paw" is taken from a fable where a monkey tricks a cat into scooping chesnuts from a fire so that the monkey can eat the chesnuts, leaving none for the cat).

**Dept. of Transp.**, 566 F.3d 582, 586 n. 5 (6th Cir. 2009)). As already noted, Lyons was employed by DDR, not Urban, at the relevant time.

Plaintiff relies on **Staub v. Proctor Hospital**, 131 S.Ct. 1186 (2011), which involved a veteran's claim of discriminatory discharge under the Uniform Service Employment and Redeployment Rights Act (USERRA). Staub's supervisor was hostile to Staub's military service obligations. The decision-maker within the company relied on the supervisor's accusations and fired Staub. Under the "cat's paw" theory, an employer may be responsible when the employer's agent commits an act based on discriminatory animus that was intended to cause, and did cause, the adverse employment decision. **Id**. at 1187.

The **Staub** case is distinguishable on its facts. There, the supervisor and decision-maker were employed by the same company. "The biased supervisor and the ultimate decisionmaker . . . acted as agents of the entity that the plaintiff seeks to hold liable; each of them possessed supervisory authority delegated by their employer and exercised it in the interest of their employer." **Staub**, 131 S.Ct. at 1193. In the present case, it is undisputed that Urban and DDR were unrelated companies. Lyons possessed no authority over Urban's

hiring decision and was not an "agent" of Urban. Although plaintiff urges that Lyons subsequently went to work for Urban and should be deemed an "agent" of Urban retroactively (i.e., before he was hired by Urban), plaintiff is attempting to stretch the Staub decision well beyond its holding. The evidence pointed to by plaintiff is inferential at best and does not amount to "direct" evidence.

Unlike the supervisor in Staub, Lyons did not make any "unfounded" charges of misconduct. None of Lyons' comments to Alper referenced anything to do with plaintiff's age, sex, or association with disabled persons. Although Sarvak indicates that she "was told" that Lyons had told Urban she was a "bad employee" (doc. no. 25-4 at 5), both Lyons and Urban deny this, and in any event, hearsay may not be considered on summary judgment. See, e.g. Thompson v. City of Lansing, 410 Fed. Appx. 922, 929 (6th Cir. 2011) (observing that the person who made the alleged comments was not involved in the decision to terminate plaintiff, and such comments were inadmissible hearsay not subject to any exception).

Moreover, the Supreme Court explained in Staub that if the decisionmaker undertakes an investigation which results in an

adverse action for reasons unrelated to the supervisor's original biased action, the employer will not be liable. Id. at 1193. Dunne personally spoke with Sarvak and independently determined that she lacked the requisite skills and experience for Urban's position.

Plaintiff alleges that Lyons also made other comments that she characterizes as "discriminatory." For example, she contends that Lyons, while he was her DDR supervisor, made comments about the difficulty of balancing work and home responsibilities and staying home to care for her children. Lyons denies this. Even supposing that any such comments were made, it is undisputed that they were not communicated to Urban and did not affect Urban's decision. No evidence suggests that Urban had any knowledge of any prior conversations between Lyons and Sarvak. While employed at DDR, plaintiff never complained of any purported discriminatory comments by her supervisor. In any event, alleged comments by a DDR supervisor would not be direct evidence of discrimination by Urban.

Under the burden-shifting analysis for claims based on indirect evidence, a plaintiff may establish a prima facie case of discriminatory "failure to hire" by showing that: (1) she was a member of a protected

class (i.e., female, over forty); (2) she applied and was qualified for the position; (3) she was not selected for the position; and (4) a significantly younger (and/or male) person was selected. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); see also, e.g., Peck v. Elyria Foundry Co., 347 Fed. Appx. 139, 142 (6th Cir. 2009) ("A prima facie case of sex discrimination, based on Elyria's failure to hire Peck requires her to demonstrate that men who applied to Elyria were hired instead of her.").

Plaintiff (female, age 44) did not formally apply for the Urban position. Given that Urban had already spoken with Sarvak, considered her for its position, and decided not to hire her, the "application" requirement is deemed satisfied. Although plaintiff believes she was "qualified" for Urban's position (doc. no. 32 at 4, ¶15), she concedes that she had not used the CTI accounting program used by Urban. Urban decided to hire another applicant, Patricia Staley, who was female and ten years older than plaintiff. Although plaintiff "disputes" that Urban hired a female for the accounting position (doc. no. 32 at 8, ¶1), she points to no evidence that Patricia Staley was not "female." The main purpose of the summary judgment rule is "to isolate and

dispose of factually unsupported claims." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 377, 323 33 (1986). Plaintiff has not presented a prima facie case of age or sex discrimination. Similarly, the alleged "failure to hire" occurred under circumstances that raise no reasonable inference that the disability of plaintiff's children was a determining factor in the decision. <u>Stansberry</u>, 651 F.3d at 487.

Even assuming that plaintiff established a prima facie case, Urban has articulated a legitimate, non-discriminatory reason for its decision to hire someone else. Urban hired an applicant with significant prior experience in Urban's own accounting system. See <u>Bender v. Hecht's Dept. Stores</u>, 455 F.3d 612, 626–27 (6th Cir. 2006) ("to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former"). Essentially, Urban hired a better-qualified applicant for its position. Plaintiff has not shown any evidence of pretext on such basis. See, e.g., <u>Mitchell v. Vanderbilt Univ.</u>, 389 F.3d 177, 181 (6th Cir. 2004) (affirming summary judgment for defendant employer on age discrimination claim because plaintiff

failed to produce any evidence from which a jury reasonably could find that the employer's reasons for not selecting plaintiff for the position were pretextual).

Dunne, on behalf of Urban, directly contacted plaintiff and inquired about her skills and duties. After confirming that Sarvak was essentially in a support role for the central accounting office, Dunne recommended to his boss, Joe McCarthy, that Urban look for another accountant because Sarvak lacked the requisite skills for Urban's accounting position. Urban chose another candidate who was familiar with Urban's own system.

To challenge an employer's business judgment, plaintiff must produce evidence that could support a finding that the employer's decision was unreasonable, or, "so ridden with error that defendant could not honestly have relied upon it." Wexler, 317 F.3d at 576; Brooks v. Davey Tree Expert Co., 2012 WL 1293578, *8 (6th Cir. (Tenn.)) (explaining that in determining whether an employer "reasonably relied on the particularized facts then before it . . . the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action").

The evidence of record, including the deposition testimony of Dunne and McCarthy, reflects that after Dunne spoke with Sarvak, Urban made a reasonably informed and considered decision in choosing another candidate with substantial experience in Urban's own accounting system. Plaintiff has not shown that Urban's decision was an unreasonable exercise of business judgment.

## VI. Conclusion

All three defendants are entitled to summary judgment in their favor. Plaintiff appropriately concedes that Coventry had nothing to do with the employment decisions at issue here. As for DDR, no evidence suggests that plaintiff's age, sex, or association with disabled dependents had any role in her termination from DDR. It is undisputed that DDR lost the contract to manage the Tri-City Mall, and therefore, eliminated all positions at that location. Plaintiff has not pointed to any evidence that she was "replaced," as her DDR position no longer existed. She was not "treated differently," as **all** the DDR employees were terminated. Viewing the evidence in the light most favorable to plaintiff, she has not presented a prima facie case of age, gender, or associational disability discrimination. DDR has articulated legitimate,

nondiscriminatory reasons for terminating plaintiff's employment, which plaintiff has failed to rebut.

As for Urban, the new property management company considered plaintiff for its accounting position but chose to hire a better-qualified applicant (female, age 57) with experience in Urban's own CTI accounting system. Plaintiff admittedly had not used the CTI system. Plaintiff has not shown that Urban's hiring decision was a pretext for any sort of discrimination.

## VII.  Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have extensively briefed the relevant issues. DDR opposes plaintiff's request for oral argument (doc. no. 37 at 4, fn. 3). The Court finds that the pleadings and exhibits are clear on their face, and that oral argument is not warranted. **Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs**, 975 F.2d 300, 301-02 (6th Cir. 1992); **Schentur v. United States**, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly,

The "Motion for Summary Judgment" (doc. no. 23) by defendant DDR is GRANTED; the joint "Motion for Summary Judgment" (doc. no. 26) by defendants Urban and Coventry is GRANTED; plaintiff shall bear the costs of this action; this case is DISMISSED and TERMINATED on the docket of this Court.

IT IS SO ORDERED.


_____s/Herman J. Weber____
**Herman J. Weber, Senior Judge**
**United States District Court**